UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

April E. Kiel,

                              Plaintiff,

                              **Report and Recommendation**

          v.                            16-CV-513V

Nancy A. Berryhill,
*As Commissioner of the Social Security Administration*,

                              Defendant.

---

**I.      INTRODUCTION**

       District Judge Lawrence J. Vilardo has referred this case to this Court under 28 U.S.C. § 636(b).  (Dkt. No. 10.)  Pending before the Court are cross-motions for judgment on the pleadings by plaintiff April Kiel ("Kiel") and by defendant the Commissioner of Social Security (the "Commissioner"), under Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP").  (Dkt. Nos. 11, 18.)  In short, Kiel contends that the Commissioner improperly discounted more than one treating physician who documented specific functional limitations including knee problems, chronic pain, and fibromyalgia.  Kiel also argues that the Commissioner did not sufficiently account for her mood disorders and low psychological functioning scores.  The Commissioner defends the denial of benefits on the basis of numerous physical examinations that yielded normal results.  The Commissioner further argues that some of the treating physicians allegedly ignored made statements as to the ultimate determination of disability, a legal conclusion that the Commissioner is entitled to ignore.

       The Court has deemed the motions submitted on papers under FRCP 78(b).  For the reasons below, the Court respectfully recommends granting the Commissioner's motion and denying Kiel's cross-motion.

## II.     BACKGROUND

### A.     *Medical and Factual Background*

Kiel filed her application for Title II Disability Insurance Benefits and for Title XVI Supplemental Security Income on December 20, 2012, claiming a date of disability onset also of December 20, 2012. (Dkt. No. 8, Certified Administrative Record at 148–60, 189, hereinafter cited as [148–60, 189].) Kiel listed the following medical or other health providers with her application: Dr. Karuna Ahuja (2012–13); Dr. Rajwinder Dhillion (2012); Dr. James Slough; Dr. Gautam Arora (2009); Dr. Elizabeth Conroy (2012); Dr. Jeffrey Burnett (2010); and Michelle Stoltendurg (2010–11). [196–200.]

The administrative record contains medical records from Dr. Elizabeth Conroy. Dr. Conroy saw Kiel on March 21, 2012 to address symptoms pertaining to cystic acne. [260–63.] The records do not appear to address any other issues.

The administrative record contains medical records from Dr. Rajwinder Dhillion and Dr. Karuna Ahuja. On September 27, 2012, Dr. Dhillion diagnosed Kiel with knee pain, right elbow lateral epicondylitis, and mouth dryness. [266.] An MRI of the right knee taken on October 2, 2012 revealed a partial tear of the anterior cruciate ligament and bone edema in the lateral femoral condyle. [273.] Dr. Ahuja diagnosed an acute meniscal tear in Kiel's right knee on October 10, 2012. [276.] Dr. Dhillion diagnosed chronic pain and fibromyalgia on April 5, 2014. [342.]

The administrative record contains medical records from Dr. James Slough and Excelsior Orthopedics LLP. As of February 2013, Kiel had considerable pain with the range of motion in her right knee; the plan was to continue physical therapy for the knee and to continue seeing a rheumatologist for symptoms of fibromyalgia. [281.]

Consultative psychologist Dr. Janine Ippolito conducted a psychiatric evaluation on April 4, 2013.  Kiel presented with dysthymia and some emotional distress related to physical pain.  [294.]  Kiel showed average to below-average intellectual functioning, with fair insight and judgment.  [294.]  Kiel was capable of most activities of daily living.  [294.]  Dr. Ippolito included the following medical source statement in her evaluation:

> The claimant presents as able to follow and understand simple directions and instructions, perform simple tasks independently, learn new tasks, make appropriate decisions, and relate adequately with others with no evidence of limitations.  She can maintain a regular schedule with mild limitations.  She can maintain attention and concentration, perform complex tasks with supervision, and appropriately deal with stress with moderate limitations.  These limitations are due to her fatigue and emotional distress.
>
> The results of the present evaluation appear to be consistent with psychiatric problems, and this may significantly interfere with the claimant's ability to function on a daily basis.

[295.]

Consultative physician Dr. Donna Miller performed an internal medicine examination of Kiel on April 4, 2013.  Dr. Miller diagnosed fibromyalgia and right knee pain.  [299.]  For a medical source statement, Dr. Miller wrote only that "[t]he claimant has mild limitation for kneeling and squatting."  [300.]

Kiel underwent an initial psychiatric evaluation at Child and Family Services on January 2, 2014.  Kiel was observed with a depressed mood but with clear and coherent speech.  [455.]  Kiel had no motor abnormalities and an organized thought process.  [455.]  Kiel received a diagnosis of bipolar disorder and posttraumatic stress disorder, along with assessments of fibromyalgia and rheumatoid arthritis.  Kiel was assigned a Global Assessment of Functioning ("GAF") score of 48.  [456.]

The administrative record contains medical records from Dr. Gautam Arora. On November 8, 2013, Dr. Arora summarized Kiel's conditions as: chronic pain syndrome; cervicalgia; cervical spondylosis; cervical disc degeneration; lumbar disc degeneration; lumbago; and lumbosacral spondylosis. [304.] The diagnoses continued through follow-up visits and examinations in 2014. [*E.g.*, 524.]

The administrative record contains medical records from Dr. Joseph DiPirro. On December 19, 2013, Dr. DiPirro diagnosed lower leg joint pain, chronic pain syndrome, and depressive disorder. [313.] For the chronic pain syndrome, Dr. DiPirro commented that the pain would be an ongoing chronic issue with a possible lifelong need for pain medication. [312.] The diagnoses continued through follow-up visits and examinations in 2014. [*E.g.*, 321.]

B.   *Procedural Background*

As the Court mentioned above, Kiel filed her initial application on December 20, 2012. The Commissioner denied the initial application on May 3, 2013. [94.] On July 5, 2013, Kiel requested a hearing by an Administrative Law Judge ("ALJ"). [102.]

The hearing before the ALJ occurred on November 18, 2014. [44.] Among other information, Kiel testified about the swelling and severe pain that has persisted in her right knee. [50.] Kiel testified that the pain also has extended throughout her body due to her fibromyalgia. [50, 57.] Kiel testified that her son helps with grocery shopping but that she can do basic household activities like cooking, cleaning, and laundry. [51–52.] According to Kiel, she can sit for up to 45 minutes at a time and can stand for up to 30 minutes at a time. [52.] Lifting is limited to about 10 pounds and walking is limited to about 12 feet at a time. [53.] Kiel listed the medications that she was taking for pain and for mood stabilization. [62–65.]

The VE also testified at the hearing. The VE began with his assessment of Kiel's relevant past work, assigning to her prior jobs a Specific Vocational Preparation ("SVP") level of between four and eight. [67.] The VE then addressed a hypothetical about possible present conditions and how they might match up with Kiel's past work:

> Q. Now assuming we have an individual who is 46 years of age with a high school education, past work as described, and would have the ability to lift 20 pounds occasionally, 10 pounds frequently, sit stand and walk 6 hours each, is able to follow and understand simple directions and instructions, perform simple tasks independently, learn new tasks, make appropriate decisions and relate adequately with others, no evidence of limitations. Maintain a regular schedule, maintain attention and concentration, perform complex tasks with supervision and appropriately deal with stress with a slight limitation, but would not affect competitive employment. Are there jobs in the national economy that this person could perform?
>
> A. Yes, Judge. This is consistent with light exertional work, so and I think I'd probably do the past collection clerk job, which was sedentary in exertion. And then could do social service aide as it's classified by the DOT. Not as she performed it, she lifted up to 40 making it medium in exertion, but it's consistent with social services aide which is normally at a light exertion.

[68.] The ALJ then modified the above hypothetical:

> Q. Now my same—or my second hypothetical, assuming the same age, education, past work and physical and mental abilities, with a sit/stand option.
>
> A. Yes. Well I think the sedentary collection clerk would be consistent with that. These jobs typically today are performed with headsets and microphones, they use computer screens and with a mouse and drop-downs, and as long as she stays at the workstation she would be able to do the work seated or standing. There might be some periods where she's required to sit to input information on the keyboard, but that's not a major part of the job. The major part of the job is contacting the public and collecting debt, so it's interacting over the telephone. So she could do that either seated or standing.

[70.] Kiel's counsel added one more modification of the hypothetical:

> Q. Mr. Janikowski, if my client, due to pain and depression, was required to lie down more than half of the workday would that preclude all forms of gainful employment?

A. Yes. All forms of full-time gainful employment.

[71.]

The ALJ issued an unfavorable decision on February 6, 2015. The ALJ found that Kiel had several severe impairments through her date last insured: right knee derangement, fibromyalgia with joint pain, and obesity. [21.] The ALJ nonetheless found that Kiel had no impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [23.] Among other parts of the analysis, the ALJ determined that

> The record fails to establish that the claimant has an impairment or combination of impairments that meets or medically equals the criteria of any listed impairment. The medical evidence of record does not document signs, symptoms, and/or laboratory findings indicating any impairment or combination of impairments severe enough to meet the criteria of any listed impairment. No treating, examining, or non-examining medical source has mentioned findings or rendered an opinion that the claimant's impairments, singly or in combination, medically equaled the criteria of any listed impairment. Specific consideration has been given to the applicable sections 1.00 (musculoskeletal) of the listed impairments.
>
> There are no listing criteria specific to the evaluation of obesity impairments. However, SSR 02-1p requires consideration of obesity in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any listing, and finally in determining the residual functional capacity. Obesity may have an adverse impact upon co-existing impairments. For example, obesity may affect the cardiovascular and respiratory systems, making it harder for the chest and lungs to expand and imposing a greater burden upon the heart. Someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone. In addition, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule.

[23.] The ALJ next considered Kiel's residual functional capacity ("RFC") and determined that she could "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to lift up to 20 pounds occasionally, up to 10 pounds frequently, and sit/stand/walk six hours each. She requires a sit/stand option at will. The claimant is able to follow and understand simple

directions and instructions, perform simple tasks independently, learn new tasks, make appropriate decisions and relate adequately with others (no evidence of limitations), maintain a regular schedule, maintain attention and concentration, perform complex tasks with supervision and appropriately deal with stress, with [] slight limitations." [23–24.] The ALJ based this determination on medical records suggesting "a normal gait, normal muscle tone, full range of motion of all extremities, normal strength, and normal sensation, reflexes and coordination (Exhibits 12F at 6, 10, 22–23, 13F at 10). Other examinations have indicated normal results with the exception of decreased range of motion and tenderness of the lumbar spine, positive Straight Leg Raising test results, and decreased sensation in the lateral right leg (Exhibit 16F at 2, 5, 7, 18, 25, 29, 41)." [25.] These records prompted the ALJ to give little weight to the opinions of Drs. DiPirro and Dhillion, particularly any opinions that Kiel was totally disabled. [27.] The ALJ gave some weight to Dr. Ippolito's psychiatric assessment to the extent that her findings of mild limitations were consistent with other information in the record. [27.] The ALJ discounted findings of moderate limitations as inconsistent with the record. [27.]

      Following the ALJ's determination, Kiel exhausted her administrative remedies by seeking review by the Appeals Council on March 23, 2015. [7.] The Appeals Council upheld the ALJ's determination on April 28, 2016. [1.]

      Kiel commenced this case by filing her complaint on June 22, 2016. (Dkt. No. 1.) Kiel filed her motion for judgment on the pleadings on January 19, 2017. (Dkt. No. 11.) Kiel argues that the ALJ improperly discounted Dr. DiPirro's clinical findings about her function-by-function limitations, especially considering his status as a treating physician. (Dkt. No. 11-1 at 13.) Kiel argues further that the ALJ ignored how Dr. Arora's "exams have consistently shown limited range of motion in her lumbar spine, positive straight leg raising and decreased sensation in her right leg.

Judge Harrop does not even mention Dr. Arora in his decision." (*Id.* at 13–14.) Kiel also cites objective clinical findings from Drs. Dhillion and Miller. (*Id.* at 14.) Finally, Kiel argues that the ALJ gave insufficient consideration to Kiel's GAF score and cherry-picked information from Dr. Ippolito's report that could be seen as supporting a denial of benefits when considered out of context. (*Id.* at 19–20.)

The Commissioner filed a cross-motion on May 22, 2017. (Dkt. No. 18.) The Commissioner argues that the ALJ did in fact consider available clinical evidence and that "numerous physical examinations yielded normal results. Dr. DiPirro noted normal physical examination findings in May, June, September, and December 2013, and in June of 2014." (Dkt. No. 18-1 at 17.) The Commissioner disagrees with the assertion that the ALJ ignored Dr. Arora:

> The ALJ noted that Dr. Arora's physical examination results were normal with the exception of a decreased range of motion and tenderness in Plaintiff's lumbar spine, a positive straight leg raising test, and decreased sensation in her right leg. Tr. 21, referring to Tr. 500–01, 503–04, 505–06, 517, 522–25, 526–28, 537–40. Records from April to October 2014 stated that Plaintiff experienced 70–80% pain relief with medication, which lasted for two to three hours. Tr. 500, 503, 505, 516, 518, 522, 526. As the ALJ noted, she also reported to Dr. Arora that she had been swimming over the summer of 2014. Tr. 23, referring to Tr. 500, 503, 505. These examination records, then, also did not support the limitations in Dr. Dhillon's and Dr. DiPirro's opinions.

(*Id.* (citations omitted).) The Commissioner argues that the ALJ had the authority to reject any portions of Dr. Ippolito's opinion not supported by objective evidence. (*Id.* at 21.) Finally, the Commissioner notes that the parties agree that the ALJ had no obligation to give weight to any treating physician's statement regarding the ultimate issue of disability. (Dkt. No. 11-1 at 16; Dkt. No. 18-1 at 18.)

### III. DISCUSSION

*A. Standard of Review Generally*

The ultimate issue to be determined by this Court is whether the ALJ's decision that Kiel was not under a disability is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir.1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

For purposes of Social Security disability insurance benefits, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Kiel bears the initial burden of showing that her impairments prevent her from returning to her previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could

perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing her past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing her past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry*, *supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing her past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that she has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to her past relevant work given her residual functional capacity. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

B.   *Weight Given to the Treating Physicians*

The Court turns first to Kiel's argument about the weight that the ALJ gave to some of her treating physicians, including Drs. DiPirro, Arora, Slough, and Dhillion. "Generally, we give more

10

weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). When "a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.* "An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion. Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citations omitted).

Here, Kiel's argument about how the ALJ considered Dr. Arora is somewhat misplaced. Kiel is correct in the limited, technical sense that the ALJ did not mention Dr. Arora by name in the decision denying benefits. Nonetheless, the ALJ cited multiple pages of Exhibit 16F from the administrative record [25], and Exhibit 16F consists of 68 pages of medical records from Dr. Arora. [504–72.] In those medical records, Dr. Arora did mention that medication provided 70–80% relief from pain. [504.] *Cf. Marrero v. Astrue*, No. 11-CV-583S, 2012 WL 3096026, at *3 (W.D.N.Y. July 30, 2012) (denial of benefits supported by substantial evidence in the form of favorable response to medication and ability to perform daily activities). Kiel was able to swim in the summer of 2014 and

had relief from pain medication within about 30 minutes. [507.] As late as September 2014, Dr. Arora acknowledged that Kiel had neck and back pain along with degeneration of vertebral discs. [507.] The ALJ acknowledged that Kiel had "decreased range of motion and tenderness of the lumbar spine, positive Straight Leg Raising test results, and decreased sensation in the lateral right leg." [25.] These two acknowledgments are mostly consistent with each other and do not contradict the most recent clinical examinations that Dr. Arora conducted, when he made no clinical findings beyond what the ALJ acknowledged. [504, 505, 508.] *Cf. Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (summary order) (affirming denial of benefits where, *inter alia*, multiple examinations "revealed mostly normal results"). As a result, even after the ALJ acknowledged severe impairments including Kiel's right knee problems and fibromyalgia, substantial evidence supports how the ALJ managed the administrative record with respect to those impairments.[1]

In a similar way, the ALJ properly considered the medical records from Drs. DiPirro, Dhillion, and Slough. In the hearing decision, the ALJ noted from these physicians' records that Kiel had normal clinical exam results apart from problems with her right knee. [269, 270, 273, 308.] The records expressed some optimism that physical therapy eventually would bring a full range of motion to Kiel's knee and that a continuing relationship with a rheumatologist would control her fibromyalgia. [281.] *Cf. Young v. Astrue*, No. 7:05-CV-1027 NAM/GHL, 2008 WL 4518992, at *9 (N.D.N.Y. Sept. 30, 2008) ("The medical treatment plaintiff received after July 2003 does not indicate or document any progression or worsening of plaintiff's condition.). Kiel's motion papers do not contain an argument that the administrative record lacks normal clinical findings. *Cf. Diaz v.*

---

[1] Kiel's citation to what is essentially a checkbox in the initial assessment of her claim (Dkt. No. 11-1 at 15) is unavailing. The evaluator in fact did check off that the objective medical evidence alone could substantiate Kiel's statements. [92.] That same evaluator used the objective medical evidence to confirm that Kiel had only occasional postural limitations that were consistent with the determination of her RFC that came later. [93.]

*Shalala*, 59 F.3d 307, 314 (2d Cir. 1995) (ALJ had discretion to weigh evidence in a record that contained normal clinical findings). Instead, Kiel appears to be arguing that the partial tear of the anterior cruciate ligament in her right knee and her fibromyalgia in themselves permitted the respective treating physicians to offer opinions that she was totally disabled. Under the circumstances, however, the ALJ stayed in bounds by rejecting any opinions about total disability as both unsupported by the normal clinical findings and as infringing on a legal matter reserved to the Commissioner. *See, e.g., Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative.").

        C.     *Consideration of Kiel's Mental Conditions*

Next, the Court will consider the ALJ's treatment of Dr. Ippolito's report, particularly Kiel's argument that the ALJ reviewed the report selectively. Generally, "[i]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. § 404.1520(c). A special technique also applies in the specific instance of potential mental impairments. *See generally* 20 C.F.R. § 404.1520a. Here, the ALJ acknowledged and considered both the functional areas used when assessing mental impairments and the criteria for mental impairments under Listing 12.00C. [22.] *See* 20 C.F.R. § Pt. 404, Subpt. P, Appx. 1. Kiel herself testified, and the administrative record indicates, that she is largely capable of activities of daily living. [51–52, 294, 295, 455.] *Cf. Vanterpool v. Colvin*, No. 12-CV-8789 VEC SN, 2014 WL 1979925, at *15 (S.D.N.Y. May 15, 2014) (positive clinical findings about mental functioning provided ALJs substantial evidence to deny benefits). As late as April 2014, one of Kiel's providers noted that "April has begun to form new relationships and focus on getting her independence, per ct [sic] this has helped her mood and made her realize [what] she can do for herself. April to

identify two ways to keep up her motivation and any barriers that can prevent her from making changes." [421.]  *Cf. Allen v. Astrue*, No. 11-CV-330, 2012 WL 951553, at *2 (N.D.N.Y. Mar. 20, 2012) (no severe mental impairment where the administrative record indicated "no significant limitations in understanding, remembering, and carrying out short and simple instructions; working in coordination with or proximity to others; making simple work-related decisions; interacting appropriately with the public; asking simple questions or requesting assistance; getting along with co-workers or peers; and maintaining socially appropriate behavior").  While Dr. Ippolito certainly diagnosed Kiel with dysthymic disorder, she also found that Kiel had "[c]oherent and goal directed [thought process] with no evidence of hallucinations, delusions, or paranoia in the evaluation setting." [293.]  The Court finds that no selective interpretation of Dr. Ippolito's report occurred. Under these circumstances, substantial evidence supported the ALJ's determination that Kiel had some limitations in mental functioning, but only mild ones.  Additionally, Kiel's argument that the ALJ "also erred in finding that the Plaintiff does not receive individual therapy" (Dkt. No. 11-1 at 18) is somewhat misplaced.  Dr. Ippolito clarified the situation when she recorded that "[t]he claimant states that she currently does not receive any individual therapy, though participates in family counseling twice per week at Child and Family Services." [292.]

## IV.     CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends granting the Commissioner's motion (Dkt. No. 18) and denying Kiel's cross-motion (Dkt. No. 11).

## V.      OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below.  Any objections to this Report and Recommendation must be electronically filed with the Clerk of the Court within 14 days.  *See* 28 U.S.C. § 636(b)(1); FRCP 72.

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted).

  SO ORDERED.

              */s Hugh B. Scott*
              Honorable Hugh B. Scott
              United States Magistrate Judge

DATED: April 18, 2018